516 S.E.2d 501

**Sherrill G. RANKIN, Plaintiff below, Appellant,**

v.

**Joyce PULLEN and Spice Rak Club, Inc., a West Virginia Corporation, Defendants below, Appellees,**

v.

**Alfred E. Harriston and Double O's, Inc., Third–Party–Defendants below.**

**No. 25809.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1999.

Decided June 10, 1999.

Norman T. Daniels, Jr., Esq., Charles Robert Sharp, Esq., Daniels Law Firm, P.L.L.C., Charleston, West Virginia, Attorneys for Appellant.

Mark E. Troy, Esq., Pullin, Knopf, Fowler & Flanagan, Charleston, West Virginia, Attorney for Appellee Joyce Pullen.

PER CURIAM:

This case is before this Court upon an appeal of a final order of the Circuit Court of Kanawha County entered on January 6, 1998. The appellant and plaintiff below, Sherrill Rankin ("Rankin"), appeals the entry of summary judgment in favor of the appellee and defendant below, Joyce Pullen ("Pullen").

Rankin was injured while working at the Double O's Restaurant, a business that was located in a building owned by Pullen in downtown Charleston. Rankin filed suit against Pullen[1] alleging that Pullen had failed to provide a reasonably safe place for Rankin to work.

In this appeal, Rankin contends that the circuit court erred by finding as a matter of law that Pullen had not breached any duty of care to Rankin. We find that the circuit court did not err in granting summary judgment for Pullen.

I.

On August 13, 1992, Pullen leased the building in which the Double O's restaurant was located to Alfred Harriston ("Harriston"), who owned and operated the restaurant. Pullen and Harriston entered into a written lease for the premises. Pullen introduced evidence that she and Harriston, concurrent to executing the written lease for the premises, entered into an oral lease concerning certain equipment,[2] including a large freezer, that was owned by Pullen and was located in the restaurant. This oral lease allegedly required Harriston to maintain and perform all necessary repairs to this equipment—and in return for this maintenance, Harriston was to have the use of the equipment free of charge.[3]

On November 1, 1995, Rankin, working as a cook at the Double O's, was electrically shocked when she touched the exterior of the freezer. It was later determined that the freezer had an electrical short. The severe shock left Rankin totally disabled.

In her suit against Pullen, the owner of the building and the freezer, Rankin claimed that Pullen had failed to maintain the restaurant and the restaurant equipment in the restaurant in a reasonably safe manner.[4]

During a deposition, Harriston gave conflicting answers concerning the alleged oral

---

1. Rankin filed a law suit against both Pullen and the Spice Rak Club, Inc. At the time she filed her law suit, Rankin did not know whether the building was owned by Pullen or Spice Rak Club, Inc. Consequently, Rankin also filed suit against Spice Rak Club, Inc., alleging that Pullen was the president and sole stockholder of Spice Rak Club, Inc., and that either Pullen or Spice Rak Club, Inc. was the owner of the building.

   A motion for summary judgment was filed on behalf of both Joyce Pullen and Spice Rak Club, Inc. In the order granting summary judgment, the circuit court judge stated that the defendant, Spice Rak Club, Inc., did not at any time "own or lease to another the location at issue or personal property or items of equipment located therein and has, therefore, never owed the duty of care, alleged by [Rankin], to maintain said premises and the equipment contained therein in a safe and sound fashion." Rankin did not appeal the order of summary judgment entered in favor of Spice Rak Club, Inc.

2. The equipment allegedly covered by the oral agreement covered the freezer, a walk-in cooler, a double-door refrigerator, a beer cooler, an up-right cooler, a draft box, booths, sinks, a steam table and bar stools.

3. The written lease's only reference to equipment provided:

   7. MAINTENANCE AND IMPROVEMENTS. (A) Lessee shall maintain the interior of the Leased Premises clean and for making such repairs to the plumbing and electrical systems, as may be necessary from time to time. Lessee shall maintain at its expense the heating and air conditioning equipment. Lessee shall pay all cost and expenses of such improvements and altercations in accordance with existing federal, state and local laws and building codes.

4. Pullen in turn filed third-party claims against Harriston, and his restaurant, the Double O's. According to information provided to this Court through briefs, on December 3, 1998, Harriston filed for bankruptcy. On March 9, 1999, Harriston's debts, including any liability to Rankin, were discharged by order of the United States Bankruptcy Court.

lease with Pullen.[5]  However, at some time after his deposition, Harriston gave a recorded statement and a sworn written statement, stipulating to the fact that he and Pullen had entered into an oral lease regarding the freezer.[6]

No evidence was introduced indicating that the freezer was malfunctioning at the time Pullen entered into the written lease with Harriston.  Nor was there evidence indicating that Pullen had used the freezer in any manner, following the execution of the written lease for the premises.

Pullen moved for summary judgment on the basis that there was no evidence that she had breached any duty to Rankin.  On January 6, 1998, the circuit court granted summary judgment in favor of Pullen, finding that Rankin had failed "to produce any evidence capable of supporting a finding that Ms. Pullen . . . failed to provide a reasonably safe workplace or, otherwise, failed to comply with any applicable duty of care which gave rise to [Rankin's] injury."  Rankin then filed a motion to alter or amend the judgment.  This motion was denied and Rankin appealed the order of summary judgment entered in favor of Pullen.

### II.

■  We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*"  Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).  *See also* Syllabus Point 4, *Dieter Engineering Services, Inc. v. Parkland Development, Inc.,* 199 W.Va. 48, 483 S.E.2d 48 (1996);  Syllabus Point 1, *Smith v. Stacy,* 198 W.Va. 498, 482 S.E.2d 115 (1996);  Syllabus Point 1, *Jones v. Wesbanco Bank Parkersburg,* 194 W.Va. 381, 460 S.E.2d 627 (1995).  Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure,* summary judgment is required if the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■  We have also held under Rule 56(c) of the *West Virginia Rules of Civil Procedure* that:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).  *See also* Syllabus Point 2, *Cottrill v. Ranson,* 200 W.Va. 691, 490 S.E.2d 778 (1997);  Syllabus Point 2, *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389 (1997).  Additionally, "summary judgment should be granted only when it is clear that there is no

---

5.  Harriston during his deposition stated the following:

> Q:  Do you or Double O's lease any items of equipment for your restaurant?
> A:  No.
> Q:  Does it use items of equipment that it does not own?
> A:  Yes.
> Q:  What items of equipment does it use but does not own?  . . .
> A:  A freezer. . . .
> Q:  These items of equipment which we've just identified, are they all owned by the same individual or organization, to your knowledge?
> A:  To my knowledge, yes.
> Q:  And who are they owned by?
> A:  Joyce Pullen.
> Q:  You've ever paid any kind of fee for the use of these items?
> A:  No.
> Q:  And you've never entered into any type of oral agreement for the use of these items?
> A:  No.

> Q:  What was your understanding with regard to the use of this equipment?  Did you have any obligation?  In other words, could you just use it or did you have any obligation to do anything with this equipment?
> A:  I was to use it and maintain it.
> Q:  Was it your understanding that you were to perform any necessary repairs on this equipment?
> A:  Yes.

6.  In this stipulation that was filed with the circuit court after the entry of the summary judgment, Harriston agreed to the following:

> When, in August of 1993, Ms. Pullen leased to Alfred E. Harriston, acting on behalf of Double O's, Inc., the freezer which allegedly caused the plaintiff's injury, Alfred E. Harriston agreed, for the cost-free use of said freezer, to be solely responsible for all upkeep, maintenance and necessary repair on the freezer.

genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). *See also* Syllabus Point 3, *Evans v. Mutual Mining,* 199 W.Va. 526, 485 S.E.2d 695 (1997); Syllabus Point 1, *McClung Invs., Inc. v. Green Valley Community Pub. Serv. Dist.,* 199 W.Va. 490, 485 S.E.2d 434 (1997). We have also held that:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syllabus Point 5, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995).

Rankin asserts that a genuine issue of material fact exists as to whether Pullen had any control of the freezer. Rankin points to Harriston's contradictory deposition testimony concerning the existence of an oral lease regarding the freezer. Rankin argues that there is a material issue of fact as to whether Pullen fully relinquished control of the freezer.

Conversely, Pullen contends that all of the evidence indicates that she exercised no control regarding Rankin's job site, including any control over the freezer. Pullen argues that the record demonstrates unequivocally that she relinquished all control over the restaurant and all of its equipment, approximately 15 months before Rankin's injury.

■■■ Pursuant to *W.Va.Code,* 21–3–1 [1937], every employer and owner of a business location must construct, repair, and maintain a place of employment so as to render it reasonably safe. This Court has stated that:

> The goal of *W.Va.Code* 21–3–1 [1937] *et seq.* is to assure workers a reasonably safe

workplace. The legislature placed such a responsibility on the employer and the owner. The employer's duty is directly related to the employment activity that is controlled by the employer and the owner's duty is limited to providing a reasonably safe workplace, unless the owner continues to exercise control of the place of employment.

Syllabus Point 2, *Henderson v. Meredith Lumber Company, Inc.,* 190 W.Va. 292, 438 S.E.2d 324 (1993). We have additionally held that, "[w]hen the owner of a place of employment provides a reasonably safe workplace and exercises no control thereafter, the owner has complied with the responsibilities imposed under *W.Va.Code* 21–3–1 [1937]." Syllabus Point 3, *Henderson, supra.*

■■ In *Pack v. Van Meter,* 177 W.Va. 485, 354 S.E.2d 581 (1986), this Court was presented with the issue of whether the owner of a place of employment leased to an employer was liable to the tenant's injured employee for injuries arising out of a safety violation. In *Pack,* the leased premises did not have handrails and safe treads on steps as required by *W.Va.Code,* 21–3–6 [1923]. We concluded in *Pack* that this type of responsibility was one which was reasonably shared by the employer and the owner of the place of employment. However, we acknowledged that "some of the provisions in W.Va. Code, 21–3–1 through –18, involve safety requirements that are clearly the responsibility of an employer because they involve *machines or other instrumentalities directly related to the employment activity* over which the owner of the place of employment exercises no control." 177 W.Va. at 490, 354 S.E.2d at 586 (emphasis added).

Applying *Henderson, supra,* and *Pack, supra,* to the case before us, the initial issue is whether Pullen provided a safe workplace at the time Pullen leased the premises to Harriston. No allegations were made that the freezer was unsafe when Pullen entered into the written contract with Harriston. It must be assumed, then, that Pullen complied with her duty at the time the lease was signed.

If Pullen complied with her duty at the time the lease was signed, the issue that follows is whether Pullen had any control

over the freezer following the signing of the lease.

There was no evidence offered below indicating that Pullen used the freezer in any manner after the written lease was created in 1993. Additionally, while Harriston originally gave contradictory evidence about a specific oral lease with Pullen for the restaurant equipment, Harriston never varied in acknowledging that it was his sole responsibility to maintain and repair the equipment. This undisputed assumption of full responsibility for maintenance by Harriston, combined with the undisputed lack of exercise of control or usage by Pullen, effectively defeats the claim that Pullen had any degree of control over the freezer.

Thus, because there were no controverted factual issues bearing on the control issue, the circuit court properly granted summary judgment for Pullen.

Based upon the foregoing, the order of the circuit court granting summary judgment in favor of Pullen is affirmed.

Affirmed.